990 F.2d 850
 24 Bankr.Ct.Dec. 205
 In re William J. McLAREN, Debtor.
Mohamed A. ATASSI, Individually and as Trustee of the
Mohamed A. Atassi, M.D., Inc. Pension Trust Fund;
and Mohamed A. Atassi, M.D., Inc.,
Plaintiffs-Appellees,
v.
William J. McLAREN, Defendant-Appellant.
 No. 92-3130.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Nov. 10, 1992.
Decided and Filed April 7, 1993.
 
 Joseph M. Gurley, Painesville, OH, Harvey S. Morrison (briefed), Cleveland, OH, for plaintiffs-appellees.
 Robert R. Kracht (briefed), Robert W. McIntyre, George V. Pilat, McIntyre, Kahn & Kruse, Cleveland, OH, for defendant-appellant.
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 AMENDED OPINION
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Acting on behalf of three legal entities, Mohamed A. Atassi, M.D., sued bankruptcy debtor William J. McLaren regarding an unsatisfied $100,000 loan Atassi made to Plaza West, Ltd., a partnership under McLaren's control.[1] Plaintiff petitioned the bankruptcy court to determine the legal existence of the $100,000 debt and to declare the debt nondischargeable under § 523(a) of the Bankruptcy Code as a debt procured by "false pretenses, false representations and/or actual fraud." Plaintiff alleged that the entire matter was a "core proceeding" under 28 U.S.C. § 157 (West Supp.1992), thereby vesting the bankruptcy court with jurisdiction to adjudge the existence of the debt, and to declare its dischargeability in bankruptcy. In a detailed opinion, the bankruptcy judge found that no payment had ever been made on the note in question and that McLaren was the general managing partner of Plaza West. He found McLaren's obligation nondischargeable under 11 U.S.C. § 523(a)(2)(A) (West 1979 & Supp.1992). Atassi v. McLaren (In re McLaren), 110 B.R. 290, 293 (Bankr.N.D.Ohio 1990), aff'd, No. 1:90 CV 0780 (N.D.Ohio, Jan. 12, 1992).
 
 
 2
 In April, 1987, McLaren, who had advised Dr. Atassi on several investments, approached Dr. Atassi for a $100,000 loan to Plaza West for supposed refinancing. The bankruptcy judge found that in pressing Dr. Atassi for the loan, McLaren suggested the doctor use Trust Fund assets to fund the loan and offered a $15,000 fee to Dr. Atassi if the loan were made. Dr. Atassi was concerned about the propriety and security of such a loan, but McLaren persuaded him that it was "all perfectly legal." McLaren, 110 B.R. at 292.
 
 
 3
 According to the district court, Dr. Atassi later discovered that "the loan from the pension fund was probably prohibited under the tax laws, [that it] could jeopardize the tax status of the fund," and that he himself may have "violated his fiduciary duty as trustee." McLaren, No. 1:90 CV 0780, slip op. at 5. "[I]n an attempt to rectify the situation," Dr. Atassi repaid the Trust Fund not only the principal amount of the loan, but also some accrued interest. McLaren, 110 B.R. at 292.
 
 
 4
 In connection with the ill-fated loan, McLaren provided Dr. Atassi with a copy of a letter from Ohio Financial Service Corporation, indicating that a deposit of $100,000 was needed to accomplish the purported Plaza West refinancing. Actually, the amount indicated in the original letter was $15,000, not $100,000; an alteration had been made in the letter before McLaren made a copy and delivered it to plaintiffs. The bankruptcy judge found the evidence "persuasive that this alteration was effected by Mr. McLaren" to induce Dr. Atassi or his controlled corporate entities to make the $100,000 loan. McLaren, 110 B.R. at 292. The debtor applied the funds from the loan to other purposes contrary to his representations; the bankruptcy court concluded that the debtor "intentionally appropriated" the entire amount "for his own use." Id. at 293.
 
 
 5
 Plaintiffs claim that under one or more of the following provisions of the bankruptcy laws, the debt is accordingly nondischargeable:
 
 
 6
 § 523 Exceptions to discharge.
 
 
 7
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
 
 
 8
 ....
 
 
 9
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 
 
 10
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
 
 
 11
 (B) use of a statement in writing--
 
 
 12
 (i) that is materially false
 
 
 13
 (ii) respecting the debtor's or an insider's financial condition;
 
 
 14
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 
 
 15
 (iv) that the debtor caused to be made or published with intent to deceive; or
 
 
 16
 ....
 
 
 17
 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; .... (footnote omitted).
 
 
 18
 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4).
 
 
 19
 After resolving doubts in favor of the debtor, the bankruptcy judge required proof as described in our previous decision, Coman v. Phillips (In re Phillips), 804 F.2d 930, 932 (6th Cir.1986):
 
 
 20
 It is established that in order to except a debt from discharge under § 523(a)(2)(A) the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of loss.
 
 
 21
 McLaren argued that plaintiffs failed to meet "the clear and convincing evidence standard" of proof in order to succeed in their contentions, citing, among other cases from this circuit, Manufacturer's Hanover Trust Co. v. Ward (In re Ward), 857 F.2d 1082 (6th Cir.1988). Applying this rigorous standard, the bankruptcy court held that plaintiff creditors had met their heavy burden of showing an intent to deceive and essentially fraud on McLaren's part, as well as reliance on his false representations. The bankruptcy court held that the loan was legal under Ohio law, (because not knowingly usurious) and that the gratuitous repayment of $100,000 to the Trust Fund by Dr. Atassi did not discharge McLaren's obligation. After dealing with procedural deficiencies claimed by the debtor, the bankruptcy court held the note in question to be "nondischargeable under section 523(a)(2)(A)," and entered a judgment to this effect.[2] McLaren, 110 B.R. at 298.
 
 
 22
 The case was appealed to the district court, which affirmed the decision of the bankruptcy court. Noting that the bankruptcy court held the note nondischargeable under § 523(a)(2)(A), and that it was unnecessary to consider § 523(a)(4), the district court applied a clearly erroneous standard under Hardin v. Caldwell, (In re Caldwell), 851 F.2d 852 (6th Cir.1988). The district court reiterated that Bankruptcy Judge Snow had required a "clear and convincing" showing. McLaren, No. 1:90 CV 0780, slip op. at 9.
 
 
 23
 The district court held that 28 U.S.C. § 157(b)(1) (West Supp.1992) "empowers bankruptcy courts to enter final judgments in 'core proceedings,' " and that "dischargeability of a debt is a 'core proceeding'." McLaren, No. 1:90 CV 0780, slip op. at 11. The court then affirmed in all respects, and this appeal ensued.[3]
 
 
 24
 We first find that the proper burden upon the plaintiffs in this quest for nondischargeability was to show proof of McLaren's fraud by a preponderance of the evidence only. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (overruling Coman v. Phillips (In re Phillips), 804 F.2d 930 (6th Cir.1986), in that respect). Although plaintiffs were required to show fraud only by a preponderance of the evidence, even under the more rigorous "clear and convincing" standard, we find no error in the bankruptcy court's factual determinations. Nor do we detect any error in the bankruptcy court's conclusions of law.
 
 
 25
 McLaren makes two procedural arguments on appeal. First, McLaren argues that 28 U.S.C. § 157 is unconstitutional in that review of proceedings from Article I bankruptcy courts should be "de novo," citing L.T. Ruth Coal Co. v. Big Sandy Coal & Coke Co., 66 B.R. 753 (Bankr.E.D.Ky.1986). We find this case no authority for debtor's position. The judge in L.T. Ruth Coal expressed his personal opinion that § 157(b) is unconstitutional, but conceded that he was required to hold otherwise by Credithrift of America v. Lawson, 52 B.R. 369 (E.D.Ky.1985) (reversing 42 B.R. 206 (Bankr.E.D.Ky.1984)), aff'd, 791 F.2d 932 (6th Cir.1986) (Table, Text in WESTLAW No. 85-5819), cert. denied, 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed.2d 841 (1987). L.T. Ruth Coal, 66 B.R. at 758-59. In Lawson, the district court held the Bankruptcy Amendments and Federal Judgeship Act of 1984 (including 28 U.S.C. § 157) constitutional, and this court affirmed. Lawson, 52 B.R. at 370, aff'd, 791 F.2d at 932.
 
 
 26
 Second, McLaren argues that the bankruptcy judge exceeded his statutory authority by actually entering a final judgment on the validity of the underlying debt. McLaren does not state precisely a basis for challenging the allegedly excessive action. A suit by a third party creditor, such as Atassi, against the debtor (and thus the bankruptcy estate) is a core proceeding under § 157(b)(2)(B) of the Bankruptcy Code. That section expressly provides, among other things, that "allowance or disallowance of claims against the estate ... are core proceedings." 28 U.S.C. § 157(b)(2)(B). Bankruptcy Judge Snow, in rendering his decision, was operating within the meaning of this provision, and necessarily determined that this was a core proceeding in ruling for Atassi on his claims. See In re Meyertech Corp., 831 F.2d 410 (3d Cir.1987). The court in In re Meyertech explained the distinction between an action instituted by the debtor and one, as in the instant case, instituted by a creditor claimant against the debtor.
 
 
 27
 Review of the cases struggling for a precise point of delineation between core and non-core proceedings reveals a common factor which clearly distinguishes them from the present matter--they all refer to cases commenced by the debtor.... Herein, we are confronted with an action brought by a creditor and we have found no cases where the core/non-core issue has arisen in this context.... This ... is an action which has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy.
 
 Id. at 417 (emphasis in original).[4]
 
 28
 The district court properly affirmed the judgment of the bankruptcy court since the latter had determined the existence and validity of the debt due Atassi in a "core proceeding," and since the district court also carefully considered the dischargeability of the debt issue.
 
 
 29
 We, accordingly, AFFIRM the decision of the district court and that of the bankruptcy court in all respects.
 
 
 
 [1]
 Atassi sued on his own behalf, as representative of his medical corporation, Mohamed A. Atassi, M.D., Inc., and as Trustee of the Mohamed A. Atassi, M.D., Inc. Pension Trust Fund. The $100,000 loan was originally funded by Atassi's Pension Trust Fund
 
 
 [2]
 Over defendant's objections, the bankruptcy court subsequently amended the judgment order to provide for interest from the date of the note, May 11, 1987, until paid, plus fees
 
 
 [3]
 In his pretrial statements filed with the bankruptcy court, McLaren did not challenge jurisdiction or raise the question of a "core" versus "non-core" proceeding
 
 
 [4]
 See also, to this same effect, In re Micro Design, Inc., 120 B.R. 363, 367 (E.D.Pa.1990); Glassel v. Allegheny Int'l Credit Corp., 111 B.R. 495 (W.D.Pa.1989)