In re William J. McLAREN, Debtor.

William LONGO, Sr., Plaintiff–Appellee,

v.

William J. McLAREN, Defendant–Appellant.

No. 92–3966.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 6, 1993.

Decided Aug. 30, 1993.

Jack M. Schulman (briefed), Schulman, Schulman & Meros, and Sheldon Stein (briefed), Cleveland, OH, for plaintiff-appellee.

Robert R. Kracht, Robert W. McIntyre, and George V. Pilat (briefed), McIntyre, Kahn & Kruse, Cleveland, OH, for defendant-appellant.

Before: KEITH and KENNEDY, Circuit Judges; and JORDAN, District Judge.*

KENNEDY, Circuit Judge.

Defendant–Debtor William J. McLaren appeals the District Court's judgment affirming the Bankruptcy Court's decision that his debts to plaintiff-creditor William Longo were not dischargeable under 11 U.S.C. § 523(a). McLaren asserts error in (1) the denial of his request for a jury trial; (2) the holding that the claimed debts were nondischargeable pursuant to 11 U.S.C. § 523; (3) the use and introduction at trial of his 2004 examination; and (4) the Bankruptcy Court rendering a monetary judgment against him. For the reasons set forth below, we affirm.

## I.

The factual history surrounding this case is set out in depth in the decision of the Bankruptcy Court. *In re McLaren*, 136 B.R. 705 (Bankr.N.D.Ohio, 1992). The following summarizes the pertinent facts:

William Longo, a high school graduate, was the vice-president of his family's business until its sale in 1984. Longo realized several million dollars from the sale. An unsophisticated investor, he turned to McLaren, a stockbroker and financial advisor, for advice in investing his newly acquired fortune. Longo approached McLaren in early 1985 with a view toward investing in municipal bonds, but over the ensuing months McLaren persuaded Longo to invest in other business ventures in which McLaren had a personal financial interest. This lawsuit centers around three such investments, each of which proved to be a financial disaster for Longo.

In the first investment, Longo purchased a $300,000 interest in Peroil 1985, Ltd., an Ohio limited partnership syndicated by the debtor to engage in oil and gas exploration and development. The next investment involved the payment by Longo of $400,000 in connection with the proposed acquisition and syndication of a strip shopping center known as Northfield Plaza. Third, Longo loaned $350,000 to Westland Plaza Limited (another limited partnership venture which McLaren owned and promoted) to facilitate the refinancing of a mortgage upon Westland Plaza, another strip shopping center.

On December 22, 1988, McLaren filed for bankruptcy under Chapter 11 of the Bankruptcy Code. On January 23, 1990, the Bankruptcy Court converted his case to a Chapter 7 liquidation. At this time, McLaren owed various creditors in excess of $10,000,000, including more than $868,000 to Longo. Discharge was granted on August 27, 1990. Thereafter, Longo filed an adversary action against McLaren in bankruptcy court alleging that he had been fraudulently induced to invest his money with McLaren. Consequently, Longo asserted his $300,000 investment in Peroil 1985, $200,000 of his $400,000 payment to McLaren in connection with Northfield Plaza, and his $350,000 loan

---

* The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

to the Westland Plaza, were nondischargeable debts under section 523(a)(2), (a)(4) and/or (a)(6) of the Bankruptcy Code. On January 24, 1992, the Bankruptcy Court rendered judgment in favor of Longo in the amount of $812,644.90 and held such obligation (indebtedness) was not dischargeable. In a lengthy and well-reasoned opinion, the Bankruptcy Court found that Longo proved nondischargeability under section 523(a)(2)(A) of the Bankruptcy Code by a preponderance of the evidence and that admission of McLaren's 2004 examination was proper. In an earlier opinion, the court determined that McLaren was not entitled to a jury trial in this adversary proceeding and that the Bankruptcy Court had the authority to render a monetary judgment against McLaren. *In re McLaren,* 129 B.R. 480 (Bankr.N.D.Ohio, 1991). The District Court affirmed and this appeal followed.

## II. Right to a Jury Trial

■ McLaren contends that he is entitled to a jury trial to determine the dischargeability of the debts at issue and the amount owed. The question of whether a debtor has a Seventh Amendment right to a jury trial in a dischargeability proceeding was recently addressed by the Seventh Circuit in *N.I.S. Corp. v. Hallahan (In re Hallahan),* 936 F.2d 1496 (7th Cir.1991). After extensively reviewing the applicable Supreme Court precedent, the court held that a debtor who sought a jury trial to determine the dischargeability of his obligation to certain creditors and the amount of his debt had no right to such a jury trial. As the court stated:

> Two independent lines of reasoning support this conclusion. First, application of the two-part test set forth in *Granfinanciera [v. Nordberg,]* [492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ], reveals that a dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial. Dischargeability proceedings, like actions to recover preferential or fraudulent transfers, are core proceedings. See 28 U.S.C. § 157(b)(2)(I) and (J) (1988). However, dischargeability proceedings are unlike actions to recover preferential transfers in that historically they

have been equitable actions tried without juries:

>> [A] bankruptcy discharge and questions concerning the dischargeability of certain debts, involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity.

> *In re Hooper,* 112 B.R. 1009, 1012 (Bankr. 9th Cir.1990); *In re Johnson,* 110 B.R. 433, 434 ( [Bankr.] W.D.Mo.1990); *In re Brown,* 103 B.R. 734 ( [Bankr.] W.D.Md. 1989). The relief sought is also equitable since the essence of a dischargeability claim is a declaration that the debt is indeed dischargeable or nondischargeable.

> Even if we were to assume that the dischargeability action was legal in nature, however, Hallahan cannot claim a right to jury trial because, as a Chapter 7 debtor, he voluntarily submitted his case to bankruptcy court. The Supreme Court did not address the extent of the debtor's Seventh Amendment right to jury trial in bankruptcy court in *Granfinanciera.* However, if creditors "by presenting their claims ... subject[ ] themselves to all the consequences that attach to an appearance," thereby losing any jury trial right otherwise guaranteed by the Seventh Amendment, debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right. A defendant or potential defendant to an action at law cannot initiate bankruptcy proceedings, thus forcing creditors to come to bankruptcy court to collect their claims, and simultaneously complain that the bankruptcy forum denies him or her a jury trial. *See, e.g., In re Johnson,* 110 B.R. 433 ( [Bankr.] W.D.Mo.1990) (debtor has no right to jury trial in adversary proceeding brought by bank to except debt from discharge as. having been incurred by fraud); *In re Edwards,* 104 B.R. 890 ( [Bankr.] E.D.Tenn.1989) (same).

*Id.* at 1505 (citations omitted).

The case at issue is also like *Hallahan* in that it presents a perfect example of the injustice that would result from granting a

voluntary debtor who is a defendant in an adversary proceeding a right to a jury trial on demand. After McLaren filed for bankruptcy, Longo was prevented by the automatic stay from commencing or continuing any litigation outside of the bankruptcy case to recover his claim. Longo was thus forced to initiate this dischargeability proceeding in bankruptcy court. Under *Granfinanciera,* Longo's filing stripped him of any right to a jury trial he might otherwise have claimed. It would be anomalous to hold that McLaren could obtain a jury trial in bankruptcy court in these circumstances. "Debtors then would be able to block their creditors' access to a jury trial without compromising their own ability to demand a jury in their preferred forum." *Hallahan,* 936 F.2d at 1506. Accordingly, this Court finds that the Seventh Amendment confers no right to a jury trial on a debtor, like McLaren, who files voluntarily for bankruptcy and is a defendant in an adversary proceeding. "Even if [McLaren] was pursuing a 'legal' claim, by submitting it to the bankruptcy forum he lost any Seventh Amendment jury trial right he might have asserted." *Id.* at 1506.

### III. Fraud Under 11 U.S.C. § 523(a)

Longo claims that under one or more of the following provisions of the bankruptcy laws, the subject debts are nondischargeable:

#### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

While the other sections are implicated, Longo primarily bases his case on the "false representation" and "fraud" provisions specified in section 523(a)(2)(A). In considering an appeal from the decision of the District Court, on appeal from the Bankruptcy Court, this Court independently reviews the Bankruptcy Court's decision, applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See, e.g., In re Century Boat Co.,* 986 F.2d 154, 156 (6th Cir.1993).

It is well established that in order to except a debt from discharge under section 523(a)(2)(A)

the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss.

*Atassi v. McLaren (In re McLaren),* 990 F.2d 850, 852 (6th Cir.1993) (quoting (*Coman v. Phillips (In re Phillips),* 804 F.2d 930, 932 (6th Cir.1986)). Additionally, the proper burden upon Longo "in this quest for nondischargeability was to show proof of McLaren's fraud by a preponderance of the evidence only." *Id.* at 853 (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (overruling *In re Phillips,* 804 F.2d 930 (6th Cir.1986), in that respect)).

### A. Peroil 1985

In April 1985, McLaren approached Longo about investing in a new limited partnership, Peroil 1985, which was to be engaged in the business of drilling oil and gas wells. McLaren orally represented to Longo that he had previously been involved in a series of oil and gas drilling limited partnerships as a general partner, and that each had been successful and produced oil and gas in paying quantities. McLaren also represented that the investors in these earlier partner-

ships were receiving substantial dividends from the wells producing oil and gas. Finally, McLaren represented to Longo that Peroil 1985 would, on the basis of his management expertise and experience, be as profitable as had the earlier oil and gas drilling limited partnerships. Unfortunately for Longo, Peroil 1985 drilled a single "dry well." Applying the factors set forth in *Phillips*, the Bankruptcy Court found that:

> [T]he Debtor's statement that his prior oil and/or gas ventures were successful was a material misrepresentation of the facts. [The court] further finds that the representation that mutual acquaintances of the Debtor and plaintiff were receiving substantial payments from prior ventures was also materially false and misleading. Had the Debtor qualified this assurance with the admission that such payments had been made in whole or substantial part from his own funds, not from the ventures, it would have undercut his assurances that prior ventures were successful as well as his projections for the [creditor's] investment in Peroil 1985.

The Debtor makes much of the fact that these projections were only predictions of future events, not misstatements of fact that can support a finding of fraud. But this conclusion ignores the fact that the Debtor's projections were intended to, and did, communicate the Debtor's apparent belief that the returns projected, ranging from 48 percent to 69 percent on an annual basis, were not only possible but were reasonably to be expected. Given the lack of success of his prior ventures, the Debtor could not realistically have expected returns in line with these projections. He may have hoped for such returns, but he could not have put them forward in good faith as his reasonable expectation.

The materiality of the Debtor's misrepresentations is obvious.... It is also clear

that these representations were made to induce the plaintiff to rely on them and that they were made recklessly or with knowledge of their falsity. Certainly the Debtor knew that his representations as to the success of past ventures and of distributions to limited partners based on this success were false and that projections made in the context of these misrepresentations were bogus and misleading.

*In re McLaren*, 136 B.R. at 711–12. These findings are not clearly erroneous.

McLaren contends, however, that any reliance by Longo on his representations was unreasonable. Specifically, McLaren claims that Longo received a Prospectus concerning the Peroil 1985 partnership which contained a bold warning that "[t]hese securities are speculative, involve a high degree of risk ... and certain conflicts of interest...." McLaren also claims that Longo never questioned any of the earlier investors (even though he admitted he knew them) to verify whether they were receiving production payments. This Court has stated that "[w]hether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances." *In re Ledford*, 970 F.2d 1556, 1560 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993).[1] "As a factual determination, this finding must be reviewed under the deferential clearly erroneous standard." *In re Woolum*, 979 F.2d 71, 75 (6th Cir.1992) (citing Bankruptcy Rule 8013), *cert. denied*, — U.S. —, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993). Applying these standards, it is clear that the Bankruptcy Court's findings that Longo relied on McLaren's representations in making the $300,000 investment and that this reliance was reasonable are not clearly erroneous. Longo was an unsophisticated investor who sought out McLaren because of his reputation as a knowledgeable and experienced investor.

---

1. The Court also stated that:

   Among the circumstances that might affect the reasonableness of a creditor's reliance are: (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

Longo testified that he did not receive the Prospectus until *after* he invested the money. Further, there is no reason to believe that minimal investigation by Longo would have revealed the inaccuracy of McLaren's investment return projections. As the Bankruptcy Court determined:

> But had the plaintiff probed deeper, had he acquired and read the prospectus prior to the Peroil 1985 investment, he would not have penetrated to the heart of the fraud. He would have been put on notice that the Peroil 1984 was troubled, that the Debtor's experience in oil and gas was limited and that the Debtor benefited not only from the syndication and sale of partnership interests but from the ventures' drilling contracts. He would, however, not have learned that the Debtor was propping up the results of his prior ventures by paying bogus distributions.

*Id.* at 712.

### B. Northfield Plaza

■ In June of 1985, McLaren offered Longo the opportunity to participate in the organization and syndication of a partnership that McLaren created to purchase a shopping center known as Northfield Plaza. Longo asserts that McLaren told him the general partnership would purchase the shopping center and, thereafter, McLaren would syndicate a limited partnership to acquire the shopping center from the general partnership. McLaren further represented that the sale of the shopping center from the general partnership to the limited partnership would generate a substantial profit for the general partnership which would be shared by the partners. Consequently, Longo invested $200,000 (thereby acquiring a 40% interest in the general partnership) and loaned McLaren an additional $200,000 so that he could also purchase a 40% interest in the general partnership. Longo testified that McLaren told him his payment would be held in escrow for acquisition of the shopping center.

**2.** McLaren contends that a 1985 letter to his lawyer describing Longo's $200,000 payment as a partnership contribution and his meetings with other Northfield partners and bankers regarding financing the closing, evidence his intent to consummate the transaction. McLaren further

According to the Bankruptcy Court, however:

> There is no dispute but what the Debtor employed the full $400,000 for his own undisclosed purposes that had nothing to do with Northfield Plaza. According to the Debtor this was his right and prerogative; in his 2004 exam he testified that the full $400,000 was a personal loan to him and he treated it accordingly. This version is, however, at odds not only with the plaintiff's testimony but with the Debtor's documentation of the transaction.
>
> . . . .
>
> The Court finds the plaintiff's version of the facts credible and persuasive and borne out by the documentary evidence prepared by the Debtor. The Court finds further that the Debtor induced plaintiff's payment of the initial $200,000 by falsely representing that this payment would be devoted to acquisition of Northfield Plaza and escrowed for that purpose, that this representation was material, known by the Debtor to be false and that it was relied upon by the plaintiff. Therefore, the Debtor is liable to the plaintiff in the full amount of $200,000 for fraudulently inducing this $200,000 payment. For this reason this $200,000 liability is nondischargeable under subsection 523(a)(2)(A) of the Bankruptcy Code.

*Id.* at 713.[2] McLaren has failed to establish that these findings are clearly erroneous. Moreover, they are supported by the following excerpt from McLaren's 2004 examination:

Q Did you plan to use any of the money that Mr. Longo gave you to acquire the property?

A Other than the related option expenses, ... but that would have been maybe $25,000 give or take of [sic] a portion of the funds to pay for the related preparation of the memorandum, that type of thing.

claims that his testimony at his 2004 examination establishes that a major client (tenant) of the proposed shopping center pulled out and that is what caused the deal to fall through. The Bankruptcy Court chose, however, to credit the testimony of Longo instead.

. . . .

Q What did you, in fact, do with the money Mr. Longo gave you?

A I used it for either investment or personal obligations, but I don't recall specifically.

Q Did you ever buy the Northfield Plaza property?

A No.

Joint App. at 254–55.[3]

### C. Westland Plaza

■ Longo made the last transaction in question, $350,000, in November of 1985. McLaren told Longo that the money was needed only briefly in order to facilitate a mortgage refinancing of Westland Plaza Limited, another limited partnership in which McLaren was the general partner. Longo alleges that McLaren told him he would be repaid in sixty days and receive $46,670 in interest (equal to an annual rate of 80%). The parties entered into a loan agreement and the loan was evidenced by Westland Plaza's promissory note (which was also executed by the Debtor as a general partner). The loan agreement provided that "[t]he parties expressly acknowledge that the advancement made by Lender to Partnership is for the purpose of enabling Partnership to fully discharge all of its indebtedness, which mortgage note is secured by a first mortgage lien on that certain parcel of real property known as 'Westland Plaza'. . . ." In his 2004 examination, however, McLaren acknowledged that the loan proceeds were not used to pay off Westland Plaza's mortgage and that instead, he used the loan proceeds for his own purposes. According to McLaren, "the purpose of the loan was to make available to me the funds that Westland Plaza owed me." Additionally, the record discloses that McLaren never caused the $350,000 loan to be shown as an obligation of Westland Plaza on its financial records. Therefore, it was not clearly erroneous for the Bankruptcy Court to find that "Debtor used Westland Plaza as a plausible pretext for disguising his personal need for money. In the process he

materially misrepresented the circumstances of the loan." *In re McLaren,* 136 B.R. at 715. It was also not clearly erroneous for the court to find that Longo reasonably relied on McLaren's representations. McLaren presented himself to Longo as a reputable, sophisticated investment expert. There was no reason for Longo to question the appropriateness of the return McLaren offered as Longo was entitled to believe that he would receive some benefit in exchange for the loan. "Although a wiser man than plaintiff might have questioned the 79 percent return or sought additional protections, the plaintiff may not be penalized for acting unwisely." *Id.*

Accordingly, both the Bankruptcy Court and the District Court properly determined that the three obligations in question are not dischargeable.

### IV. Admissibility of Debtor's 2004 Examination

■ McLaren next contends that the Bankruptcy Court erred in permitting the introduction and use of his Bankruptcy Rule 2004 examination. Prior to the filing of this adversary proceeding, a Rule 2004 examination of McLaren was conducted and the minutes memorialized. At trial, McLaren asserted (for the first time) his Fifth Amendment privilege and refused to testify. Upon request by Longo, the Bankruptcy Court allowed Longo to introduce portions of the 2004 exam because the information sought to be introduced constituted admissions by a party opponent under Fed.R.Evid. 801(d)(2). McLaren objected to the admission of this testimony, but argued that if any portion of the examination was going to be admitted, the entire transcript should be admitted. The court overruled McLaren's initial objection but ruled that the entire transcript was to be admitted. On appeal, McLaren continues to argue that it was error to introduce his admissions into evidence because Longo failed to disclose an intent to use the 2004 exam at trial; McLaren never signed the examination; and fewer procedural protections are afforded to a debtor in a 2004 exam

---

**3.** The Bankruptcy Court also found this debt to be nondischargeable under § 523(a)(4). The court held that "In its plain and ordinary meaning the term 'fiduciary capacity' extends to the relationship between partners." The court fur-

ther found the obligation nondischargeable under § 523(a)(6). Because the debt is nondischargeable under § 523(a)(2), we find it unnecessary to address the applicability of these other provisions.

than a deponent under Rule 30 of the Federal Rules of Civil Procedure.[4] Finding that 2004 examinations have repeatedly been admitted into evidence, and that admission of the exam in this case was particularly appropriate in light of the circumstances surrounding the taking of the exam (*e.g.,* debtor represented by counsel who participated actively; debtor's testimony taken down and transcribed by a court reporter; debtor never moved to have the exam treated confidentially; debtor attached the exam to a pleading he filed), both the Bankruptcy Court and District Court rejected McLaren's arguments. We agree with the District Court that:

> Whatever potential for incrimination exists in the transcript is not enhanced or otherwise affected by use of the transcript at this trial. The time to have invoked the Fifth Amendment privilege was at the 2004 examination....

> Debtor's claim of surprise is equally without merit. Plaintiff designated as witnesses only the plaintiff, the defendant, the Debtor's accountant and two of Debtor's attorneys. It was obvious that the Debtor's testimony was important to the plaintiff's case.... The Debtor should have expected that the transcript of the Debtor's 2004 examination would be used appropriately under applicable rules of evidence and procedure whether or not listed by the plaintiff as a document he intended to introduce as evidence.

> Finally, Debtor's argument that the transcript is inadmissible because the Debtor failed to sign it is equally unavailing. The Debtor submitted this transcript to the Court on his own motion without any suggestion that it inaccurately stated the Debtor's testimony. At trial, the Debtor in lengthy argument made no suggestion that the transcript did not accurately state his testimony. Moreover, he moved the admission of the transcript of

the entire 2004 examination. These actions by the Debtor clearly validate the transcript as his testimony as fully as if he had signed the transcript.

## V. Bankruptcy Court's Authority to Render Monetary Award

■ McLaren's final argument is that while there is authority in the Bankruptcy Code for the bankruptcy court to determine whether a debt is dischargeable under section 523, there is no authority for the court to render a monetary judgment thereon. Consequently, McLaren claims that the Bankruptcy Judge exceeded his statutory authority by actually entering a final judgment on the validity of the underlying debts in question. McLaren raised this same argument in a recent case involving another creditor who made a loan to Plaza West, Limited. *Atassi,* 990 F.2d at 850. In *Atassi,* the bankruptcy court found that no payment had ever been made on the note in question (evidencing the loan), that McLaren applied the loan proceeds to purposes contrary to his representations, and that McLaren was the general managing partner of Plaza West. Accordingly, the court found McLaren's obligation nondischargeable and entered a monetary judgment thereon. This Court recognized that a suit by a third party creditor, such as Longo, against the debtor (and thus the bankruptcy estate), is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B). As such, the bankruptcy court has jurisdiction to adjudge the validity and amount of a claim together with its dischargeability. In *Atassi,* this Court held that:

> The district court properly affirmed the judgment of the bankruptcy court since the latter had determined the existence and validity of the debt due Atassi in a "core proceeding," and since the district court also carefully considered the dischargeability of the debt issue.

---

**4.** McLaren also argues that permitting the introduction of the exam into evidence contravenes the Bankruptcy Rules which prohibit bankruptcy judges from presiding at or attending first meetings of creditors conducted in accord with 11 U.S.C. § 341. McLaren contends that the 2004 examination is just an "extension" of the § 341

meeting. McLaren not only fails to provide any support for this position, he also failed to raise this argument below. Accordingly, we decline to address it. *See, e.g., Pinney Dock and Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1461 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

*Id.* at 854. *See also Hallahan,* 936 F.2d at 1507–1508 (recognizing that the bankruptcy court has jurisdiction to enter a money judgment for the amount of the creditor's claim found to be excepted from discharge); *In re Devitt,* 126 B.R. 212, 215 (Bankr.D.Md.1991) ("If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt.").

In *Hallahan,* the Seventh Circuit recognized that requiring the empaneling of a jury in bankruptcy court in the midst of a dischargeability proceeding, or referring the matter back to the district court for a jury trial "creates a cumbersome process." *Hallahan,* 936 F.2d at 1508. The court also reasoned that "allowing the bankruptcy judge to settle both the dischargeability of the debt and the amount of the money judgment accords with the 'rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief.'" *Id.* (quoting *Alexander v. Hillman,* 296 U.S. 222, 242, 56 S.Ct. 204, 211, 80 L.Ed. 192 [1935]). Because a party properly before a court of equity subjects himself "to all the consequences that attach to an appearance," *id.,* the amount of McLaren's liability was properly determined by the Bankruptcy Court. *Id.*

## VI.

Accordingly, we **AFFIRM** the decision of the District Court and that of the Bankruptcy Court in all respects.