## In re Michael M. KROMAR, Debtor.

### Alside Supply Center, Plaintiff,

v.

### Michael M. Kromar, Defendant.

**Bankruptcy No. 00–14568.
Adversary No. 00–1313.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 21, 2001.

---

Glenn E. Forbes, Painesville, Ohio, for Plaintiff.

Richard F. Smith, Jr., Cleveland, Ohio, for Defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the Court is the dischargeability of a debt totalling $42,936.15, arising out of a long series of sales between the Plaintiff, Alside Supply Center ("Alside") and the Debtor, Michael M. Kromar ("Debtor"). Herein, a determination of dischargeability is made pursuant to § 523(a)(2)(A) and (B) of the Bankruptcy Code.

The Court acquires core matter jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(a) and (b), 28 U.S.C. § 1334, and General Order Number 84 of this District. Following a duly noticed trial proceeding, the following findings and conclusions are made:

In October of 1995, the Debtor and his father, Ronald Kromar, began operations of a corporation named Lifetime Home Improvements, Inc. ("Lifetime"). At the outset, they were the only two shareholders in the corporation. In January, 1996, the two men sought an extension of credit from Alside to Lifetime. Acting on behalf of the corporation, they obtained and completed an application for credit from Alside and returned it by facsimile. (Debtor, Direct.)

The application requested five credit references. Lifetime supplied the names of five suppliers, of which it had actually purchased supplies from only two. (Debtor, Direct.) Second, the application requested a financial statement, to show the applicant's assets, liabilities, and locations of real estate. The first line of the financial statement inquired whether the information provided concerned "company" or "personal" financial information. (Plaintiff's Exh. 1–2.) Lifetime's application indicated that it provided both company and personal financial information, which included $75,000.00 cash on hand, $2,500 in

equipment, and $160,000.00 in equity in certain residential real estate. Id. The application did not request, and the applicant did not provide, information detailing which assets were personal assets as opposed to those which belonged to the company. In fact, much of the cash on hand, and all of the real estate belonged to Ronald Kromar personally. Third, an "Agreement of Guarantee" [sic] accompanied the application. Therein, the signatures of four individuals—the Debtor, Rebecca L. Kromar, Ronald Kromar, and Myra Louise Kromar—appear at the bottom of the agreement. (Plaintiff's Exh. 2.) The parties later stipulated that the signature of Myra Louise Kromar is inauthentic.

Michael Drews ("Drews"), an Operations Manager for the West Cleveland branch of Alside, received and processed Lifetime's application for credit. (Drews, Direct.) He testified that, although guarantors and security were necessary for the extension of credit to a new company, there was no requirement for a specific number of guarantors or amount of security. Id.

Upon receipt of the application and guaranties, Alside granted Lifetime an initial extension of credit in the amount of $3,000. Id. Over the next two years, Lifetime transacted significant amounts of business with Alside, to the extent that Lifetime became one of Alside's biggest customers. Id. In fact, the volume of Lifetime's business with Alside was so significant that Alside rewarded the Debtor with such incentives as a free trip to the British West Indies, weekly lunches, and free rounds of golf. (Debtor, Direct.) Eventually, Lifetime's credit line was increased to $50,000.

At some point in April of 1996, Ronald Kromar withdrew from the corporation. He subsequently notified Alside that he wished to revoke his guaranty. He did not, however, inform Alside that it was his personal real estate and primarily his $75,000 in cash [1] that were listed as collat-

---

1. Accounts varied as to the amounts contrib- uted by the Debtor and Ronald Kromar. The

eral in the financial statement portion of the credit application. (Ronald Kromar, Cross–Exam.) Later, one of Lifetime's salesmen, Mike Delzappo, replaced Ronald Kromar as the second shareholder. (Drews, Direct.) Drews alleges that Lifetime never apprised Alside of these changes in ownership, as required by the contractual language of the credit application.

Although Lifetime had exhibited a good payment history throughout the first years of its relationship with Alside, its account fell into arrears in 1998. Drews testified that he first became aware of the problems with the account in June of 1998, and revoked the credit privileges soon thereafter, allowing Alside to fill orders on a cash-on-delivery basis only. *Id.* By August, 1998, the time of the last account activity, the balance stood at $44,936.15. (Plaintiff's Exh. 3–1.)

The Debtor filed a chapter 7 petition in bankruptcy on June 21, 2000. Alside now seeks to have the Court declare its debt nondischargeable under 11 U.S.C. § 523(a)(2)(A) or (B). In support thereof, Alside argues that the Debtor deliberately presented false information in the credit application, that it relied upon the information, and that it was damaged by that reliance. As examples of the alleged misrepresentation, Alside relies upon: (1) the nonexistence of a trade relationship with three of the five credit references; (2) the nondisclosure of the fact that the assets listed in the financial statement predominantly belonged to Ronald Kromar, who subsequently withdrew from the corporation; (3) the invalidity of Myra Louise Kromar's signature; and (4) the noncompliance with the contractual language requiring notification to Alside of material changes in financial condition or ownership.

Section 523(a) reads, in pertinent part:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(A) and (B). In cases involving exceptions to discharge, the burden lies upon the complainant to prove nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Determining whether a debt falls within any of the enumerated provisions of § 523(a) requires a liberal construction of the Bankruptcy Code in favor of the debtor, and a strict construction against the objecting creditor. *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988).

Section 523(a)(2)(A) pertains to cases involving false pretenses, false representation, or actual fraud. To satisfy its burden of proof, Alside must establish: "1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; 2) the debtor intended to deceive the creditor; 3)

---

Debtor testified that he had contributed approximately $25,000, and Ronald Kromar had supplied approximately $50,000. (Debtor, Direct.) Ronald Kromar believed that he had contributed approximately $70,000. (Ronald Kromar, Cross–Exam.)

the creditor justifiably relied on the false representation; and 4) its reliance was the proximate cause of loss." *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280–81 (6th Cir. 1998) (citing *Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir.1993)). Whether the Debtor possessed an intent to defraud Alside is determined by a subjective standard. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ Under the first prong of the *Rembert* test, Alside must demonstrate that the Debtor obtained money—or, here, credit—through a material misrepresentation that the Debtor knew at the time to be false, or made with gross negligence as to its truth. *Rembert, supra,* at 280. For a financial statement to be "materially false," it must be "one which paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information of a type which would normally affect the decision to grant credit." *In re Collier,* 231 B.R. 618, 623 (Bankr.N.D.Ohio 1999).

■ Herein, the record does not evince that Alside granted credit due to a material misrepresentation. First, Lifetime's providing a list of credit references of suppliers with which it had not yet developed a trade relationship does not constitute a misrepresentation. The credit application asks only for "credit references"; it does not specify that the references listed must be trade creditors or to what extent the relationship existed. Similarly, the information supplied by Lifetime in the financial statement was precisely the information that the application requested. Lifetime disclosed that some of the assets listed are personal assets, and the application did not ask the applicant to quantify personal versus company assets. That Alside did not learn of the proportion of personal and company assets is due only to its own carelessness. Third, the invalidity of Myra Louise Kromar's signature does not constitute a material misrepresentation either. Drews testified that there was no specific number of guaran-

tors required. The signature of four individuals appears on the Agreement of Guaranty as guarantors. It is unsupported by the record that the credit would not have been granted absent that one questionable signature. Finally, the alleged noncompliance with the contractual language regarding future notification is not a misrepresentation because *Rembert* requires that the debtor know of any falsity at the time of the statement's execution. Herein, Alside has failed to show a known falsity at the point of execution. Moreover, Alside has not shown by a preponderance of the evidence that the contract was, in fact, violated. For example, it is not clear that Lifetime was under any obligation to inform Alside that upon Ronald Kromar's withdrawal, some of the assets provided were no longer available.

■ The second requirement under *Rembert* is that the debtor intended to deceive the creditor. *Rembert, supra,* at 280. Again, Alside has not met its burden in establishing that the Debtor intended to deceive it. As discussed above, the information supplied in the portions marked "Credit References" and "Financial Statement" was not deceitful. As to the invalid signature, there is no evidence suggesting that the Debtor knew of a forged signature before the application was transmitted to Alside.

■ The third element of *Rembert* is justifiable reliance on the debtor's representation. Here, numerous aspects of the record show that there was no justifiable reliance whatsoever. With regard to the financial statement, Drews testified that he "assumed" that the assets listed belonged to the company, and that when Ronald Kromar left the corporation, that the assets remained. (Drews, Cross–Exam.) Alside performed no due diligence to confirm the title ownership of the assets. (Drews, Court Inquiry.) He also testified that Alside has a policy of checking the references that an applicant provides, but that it did not do so in this particular

**698**

application. (Drews, Cross–Exam.) Further, Alside does not have a policy of checking the creditworthiness of the principals of a corporate applicant. *Id.* Even more striking, although Drews testified that Alside placed heavy reliance upon security for credit extended, the record is bereft of any security instrument, such as a note, a mortgage, or a security agreement of any kind. The security and guaranty upon which Alside relied appear largely illusory.

Under *Rembert,* the fourth element of a § 523(a)(2)(A) action is that the creditor's reliance is the proximate cause of the loss. *Rembert, supra,* at 281. Because Alside did not meet its burden regarding the justifiable reliance requirement, the Court need not address that element. Thus, Alside has not met its burden of proof with regard to § 523(a)(2)(A).

For several of the same reasons, Alside has not established the elements of § 523(a)(2)(B) by a preponderance of the evidence. That subsection requires: "use of a statement in writing i) that is materially false; ii)respecting the debtor's or an insider's financial condition; iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B).

■ As discussed above, the record does not demonstrate that the subject writing was materially false. The only item that was established to be false was the authenticity of Myra Louise Kromar's signature, but the materiality of that falsity is questionable, because Alside apparently would have extended credit without that particular signature. Moreover, it was not established that the Debtor had any association with or knowledge of the alleged forgery of that signature.

■ The second element of § 523(a)(2)(B) is satisfied; the subject writing did involve the financial condition

of an insider of the debtor. Under § 101(31), the definition of insider includes, where the debtor is an individual, a corporation in which the debtor is an officer. 11 U.S.C. § 101(31)(A)(iv). Here, the Debtor was president of Lifetime, which was the subject of the credit application.

■ The third element, however, is not satisfied. As discussed further above, Alside has not established any reasonable or justifiable reliance. The extension of credit was attributable in large part to its lax practices in checking creditworthiness. Reasonable reliance does not exist where a creditor neglects to check references, makes unfounded assumptions about ownership of assets, performs no due diligence, does not investigate the credit history of the principals of a small business, and does not require binding security agreements to collateralize its interest.

■ Finally, the record does not demonstrate an intent to deceive on the part of the Debtor. If the Debtor acted with even a gross negligence toward the truthfulness of Lifetime's application, then the fourth element of § 523(a)(2)(B) would be satisfied. *First Nat'l Bank of Centerville v. Sansom,* 142 F.3d 433, 1998 WL 57307 (6th Cir.1998). Herein, Alside has not established by a preponderance of the evidence either an intent to deceive or a gross negligence toward the document's truthfulness. Therefore, Alside has failed to satisfy the elements of § 523(a)(2)(B), as well.

■ The Supreme Court has instructed that bankruptcy law exists to assist "the honest but unfortunate debtor" attain a fresh start, while ensuring fairness to that debtor's creditors. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). On the other hand, the purpose of § 523 of the Bankruptcy Code is to disallow the discharge of debts that violate that policy; Congress has determined that the types of debt addressed in subsections (a)(4) and (a)(6) are "morally distinguishable from usual debt. Each

carries with it a moral opprobrium." 2 Epstein, Nickels & White, *Bankruptcy* § 7–24, 327 (1992). The record in this case does not demonstrate that the Debtor was anything short of honest, nor that his debt to Alside carries any opprobrium. There is no justification to allow Alside— which was in the best position to avoid or lessen its loss, through greater diligence in its lending practices—to except the subject debt from discharge.

Accordingly, judgment is hereby rendered in favor of the Defendant, and the subject debt is hereby found dischargeable. Each party is to bear its respective costs.

**IT IS SO ORDERED**.