In re Gaila Michelle McMANUS,
Debtor.

Huntington National Bank, Plaintiff,

v.

Gaila Michelle McManus, Defendant.

Bankruptcy No. 01–62567–R.
Adversary No. 02–4204.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

April 25, 2003.

John Z. Kallabat, Bingham Farms, MI, for debtor.

## Opinion

STEVEN W. RHODES, Chief Judge.

The plaintiff, Huntington National Bank, filed this adversary proceeding against the debtor, Gaila McManus, seeking a judgment that the debt owed by McManus to HNB is nondischargeable for fraud under 11 U.S.C. § 523(a)(2)(A). Following trial, the Court took the matter under advisement. The Court now concludes that HNB has established by a preponderance of the evidence that the debt was incurred by McManus's fraud and that therefore it is nondischargeable.

### I.

11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

■ The creditor has the burden of proving by a preponderance of the evidence that a debt is nondischargeable under § 523(a)(2)(A). *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ In *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277 (6th Cir.1998), the court of appeals clarified that under § 523(a)(2)(A), the creditor must prove the following elements:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Id.* at 280–81 (footnote omitted) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993)).

### II.

■ On November 22, 2000, McManus signed a motor vehicle purchase agreement for the purchase of a 2000 Mercedes. This agreement obligated McManus to pay $131,021.40 in principle and interest at $2,183.69 per month for 60 months. The dealer, European Auto Service, then assigned the contract to HNB. In signing this agreement, McManus clearly represented that she intended to repay this debt.

However, McManus testified at trial that in fact she did not intend to pay the debt. Accordingly, the Court must find that she falsely represented her intent.

She stated that she signed the contract at the request of two men, Emory Matthews and Vuc Jonavanic, who told her that their business, Bullseye Auto, was going to pay off the debt from an escrow account in a short time. A false credit application in McManus's name was submitted to HNB to obtain its approval for the financing, but McManus was not involved in preparing or submitting this application. She stated that Matthews and Jonavanic took possession of the vehicle after the sale. They paid her $500 for her participation in the transaction. When HNB called her about her failure to make the payments as promised, she contacted an attorney and the police.

She also stated that there were six other expensive vehicles that she purchased for

these individuals. She signed purchase agreements for each, was paid $500 for each, took possession of none, and made no payments. These additional circumstances further support the conclusion that McManus falsely represented her intent to repay.

### III.

The evidence also establishes that in falsely representing her intent to repay the debt, McManus intended to deceive HNB. No other inference regarding her intent is appropriate in the circumstances. She did not sign the purchase agreement as a result of mistake or ignorance. Rather, she knew: (1) that she was signing a contract to repay $131,021.40 for a vehicle that she had no intent to own; (2) that she could not repay that amount; (3) that she did not intend to own the vehicle; and (4) that she did not intend to repay the debt. She must have also known that the transactions were unusual; although not sophisticated in business, McManus was a licensed real estate agent at the time. She claims that she naively assumed that either Matthews, Jonavanic or Bullseye would repay the debts on the vehicles. Perhaps that is so, but that assumption neither explains her accepting $500 per transaction nor reduces her own deceptive intent. In fact, it establishes it. Her belief that someone else was going to pay the debt establishes her deceptive intent in representing that she intended to pay.

McManus's position here is that she is as much a victim of this fraud as HNB. She argues that when HNB contacted her about the payments, she went to the police to report the fraud. However, in light of the evidence establishing her own intentional false representation and her own intent to deceive, the Court simply cannot agree that she was a victim. She willingly participated in a scheme to defraud HNB.

As for going to the police, that was just as likely to protect herself as it was to report a fraud.

### IV.

The evidence also establishes that in approving the financing, HNB justifiably relied on McManus's representation that she intended to repay. Jeff Gerrard, a credit manager for HNB so testified and the Court credits that testimony. Indeed, whenever a creditor extends credit, it relies on the debtor's good faith representation of an intent to repay.

■ It is true, as Gerrard admitted, that had HNB taken the few minutes necessary to verify the employment and income information disclosed on the false credit application, it would certainly have discovered the fraud and denied the application. However, the Supreme Court does not require HNB to show that it acted as a reasonably prudent lender. *Field v. Mans*, 516 U.S. 59, 77, 116 S.Ct. 437, 447, 133 L.Ed.2d 351 (1995). The Supreme Court only requires that the creditor establish justifiable reliance, and the only evidence before the Court in this case is that HNB justifiably relied on McManus's representation that she intended to repay, false as that turned out to be.

### V.

Finally, it is clear that McManus's false representation was the proximate cause of HNB's loss. Certainly the false credit application was also a substantial contributing cause and, as noted, McManus was not directly involved in that. Nevertheless, had McManus not falsely signed the purchase agreement and thereby represented her intent to repay, HNB would not have incurred a loss of $131,021.40.

Accordingly, the Court concludes that HNB has established by a preponderance of the evidence that McManus's debt to it

was incurred by fraud and that therefore the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

An appropriate order will be entered.