OPINION
ALAN E. NORRIS, Circuit Judge.
Dimmitt & Owens Financial, Inc. (“Dim-mitt”) appeals from the district court’s affirmance of a decision by a bankruptcy court dismissing its adversary proceeding. Dimmitt had brought the adversary proceeding against John Herdean, a debtor-in-bankruptcy, claiming that Herdean’s debt to Dimmitt was not dischargeable in bankruptcy because Herdean had committed fraud. The bankruptcy judge found that Dimmitt had failed to prove fraud because it demonstrated no actual reliance on Herdean’s misrepresentations. Dim-mitt appeals from the district court’s affirmance of the bankruptcy judge’s order. We affirm, but on different grounds than those enunciated by the bankruptcy judge.
I.
The record before us indicates the following facts. Herdean was the president and a 50% shareholder in Herdean Services, Inc., a trucking company that contracted its services out to larger truckers. Among Herdean’s clients was Panther II (“Panther”), a trucking company with which Herdean signed a contract on May 5, 1998. That contract authorized Panther to deduct from its payments to Herdean sums it paid to Herdean’s drivers. Herde *109 an was aware that Panther could charge him for satellite and insurance fees.
The following month, on June 18, 1998, Herdean entered into a contract with Dim-mitt, which is in the business of purchasing accounts receivable (also known as “factoring”). Dimmitt’s typical customers are creditors who need fast cash and do not wish to wait the usual 30 to 60 days for their accounts to be paid. A customer sells its accounts to Dimmitt, which in turn pays the customer a discounted percentage of the face value of each of its invoices. Dimmitt then stamps each invoice with language stating that payment is owed to Dimmitt and mails each invoice to its customer’s debtor. When paid, Dimmitt retains a fee calculated based upon the length of time it had to wait before being paid, and returns the remainder of the amount owed to the customer. Herdean sold his accounts receivable, including the Panther account, to Dimmitt. In his contract with Dimmitt, Herdean represented that he was aware of no deductions or offsets that could be taken against the payments owed to him.
On July 27, 1998, Panther paid Dimmitt for the amount it owed Herdean minus deductions and set-offs. In September 1998, as subsequent Panther payments revealed similar deficiencies, Mike Biglione, the Dimmitt agent who had dealt with Herdean at the contract signing, called Herdean to discuss how to proceed. During the resulting discussions, Herdean explained to Biglione and the account manager, Tom Barrett, that Panther made many of the deductions to compensate it for cash advances taken from it by many of Herdean’s drivers. Herdean told them that he had attempted to prevent his drivers from taking these advances, but was unable to do so. Biglione and Barrett agreed to continue factoring with Herdean. They asked him to attempt to lower the deductions, and stated that they would “buy back” future accounts receivable to make up the shortfall. A “buyback” involves Dimmitt retaining a greater percentage of the payments it receives from its customer’s debtor or from advances. Dimmitt commonly resorted to “buying back” accounts receivable from customers who did not abide by their factoring agreements. The first “buyback” took place on September 15,1998.
Despite the new factoring agreement, deficiencies continued to appear. Dimmitt eventually ended its “factoring” relationship with Herdean. Herdean filed for personal bankruptcy under Chapter 7 of the bankruptcy code on January 19, 1999, and was granted a discharge on April 23. Dimmitt, having received no notice of the bankruptcy proceedings, sued Herdean for fraud on October 12, 1999, in state court. The damages Dimmitt sought, the same damages Dimmitt seeks in federal court, are debts that accrued starting in October 1998, after Herdean and Dimmitt had reached their “buyback” agreement. On March 20, 2000, the bankruptcy court reopened the bankruptcy proceeding to allow Herdean to amend his schedule of creditors. The state proceeding was stayed pending a determination of the discharge-ability of Herdean’s debt to Dimmitt. Dimmitt filed this adversary proceeding in bankruptcy court on May 2, 2000, seeking a ruling that the debt was not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A) because it was fraudulently obtained. On December 11, 2002, the bankruptcy judge held a hearing and ruled that Dimmitt had established sufficient evidence to pierce the corporate veil and attribute Herdean Services, Inc.’s debts to Herdean. However, the bankruptcy judge found that the debt to Dimmitt had not been fraudulently obtained because Dim-mitt never relied upon Herdean’s misrepresentations:
*110 But the reliance issue is a serious one in this case, it specifically, the Plaintiff has the burden of showing that the Defendant rely upon that there are misrepresentation [sic], or no offenses, offsets or counter claims and so forth. And what they do when they found out that there were offsets and discounts and so forth, well, they set down, they talked to the debtor, and they worked out an arrangement. In addition, Mr. Gillespie testified about a red — some techniques for dealing with a justice [sic] situation. And that being the case I just can’t conclude, in fact, notwithstanding his testimony that the Plaintiff relied upon these representations, in fact, they didn’t. When these representations occurred they didn’t complain, they agreed to work with them, they wanted to continue and did continue working with the Defendant.
(Tr. at 121-22). As a result, the bankruptcy judge dismissed the adversary proceeding. The district court affirmed, finding that the bankruptcy judge committed no clear error. This appeal followed. This court has jurisdiction under 28 U.S.C. § 158(d).
II.
This court reviews the bankruptcy court’s ruling that Dimmitt did not rely on Herdean’s misrepresentations for clear error. We review the bankruptcy court’s determination directly, without deference to the district court. Barlow v. M.J. Waterman and Associates, Inc. (In re M.J. Waterman and Associates, Inc.), 227 F.3d 604, 607 (6th Cir.2000).
Herdean argued before the bankruptcy court that he was unaware of the requirement in his contract with Dimmitt that no deductions or set-offs exist. This argument was only hinted at on appeal. Nevertheless, the bankruptcy judge did not commit clear error in finding that Herdean committed fraud because he was reckless: he failed to read the contract and did not tell Dimmitt about the known possibility of deductions for satellite and insurance fees.
Dimmitt argues that the bankruptcy judge erred in finding that its willingness to come to a new agreement with Herdean to mitigate its damages evidences a lack of reliance on Herdean’s misrepresentations when signing the original contract. The bankruptcy judge relied upon the later agreement and upon testimony indicating that Dimmitt had previously used “buybacks” in similar situations to conclude that Dimmitt had never relied upon Herdean’s misrepresentations to begin with. However, Dimmitt convincingly argues that its willingness to mitigate, along with the fact that it maintained a policy of using “buybacks” when the need to mitigate arose, did not indicate that Dimmitt would have signed the original contract had its agents known that Herdean’s accounts were subject to deductions. Rather, the mitigation only shows business judgment, and its policy of using “buybacks” to mitigate only demonstrates that Dimmitt had dealt with misrepresentations before. Indeed, a party to a contract may have a duty to mitigate its damages before it can seek redress in court. The bankruptcy judge’s finding of no reliance is clearly erroneous.
Despite the bankruptcy’s judge’s commission of clear error, we affirm his ruling under an alternate reasoning. Damages are an essential element of fraud under 11 U.S.C. § 523(a)(2)(A), and the fraudster is only liable if those damages are caused by its victim’s reliance. Longo v. McLaren (In re McLaren), 3 F.3d 958, 961 (6th Cir.1993). The damages Dimmitt seeks all accrued after Herdean and Dim-mitt agreed that Dimmitt would engage in buybacks to pay for Herdean’s earlier defi *111 ciencies, while Herdean would attempt to reduce future deductions. Herdean told Dimmitt that he had been unable to stop his drivers from seeking advances in the past; therefore, Dimmitt was on notice that Herdean may not have been able to stop deductions from being taken in the future. Dimmitt’s damages result from its new contract; the old debt caused by Her-dean’s misrepresentations has been paid, and Dimmitt assumed the risk that Herdean may not be able to prevent future deductions under the new contract. Therefore, no damages resulted from Herdean’s misrepresentations, and Herdean’s debt to Dimmitt was dischargeable in bankruptcy.
III.
For the foregoing reasons, the dismissal of Dimmitt’s adversary proceeding is affirmed.
R. GUY COLE, Jr., Circuit Judge, concurring in the judgment.