In re E.G. BAILEY and Narvell
Bailey, Debtors.

FIRST CENTENNIAL TITLE CO.
OF NEVADA, Plaintiff,

v.

E.G. BAILEY and Narvell
Bailey, Defendants.

Bankruptcy No. 96–10861.
Adversary No. 96–1074.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 29, 1997.

Steven F. Stuhlbarg, Cincinnati, OH, for plaintiff.

Paul Lukey, Cincinnati, OH, for defendants.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff brought this adversary proceeding for the purpose of determining that a debt it claims is owed to it by defendants is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). The proceeding came on for trial at the conclusion of which the court reserved decision.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(I).

Based upon the evidence presented at the trial, we find the following facts. Defendants are husband and wife, having been married February 14, 1994. Prior to March, 1994, defendant E.G. Bailey had been engaged in the construction business in Nevada. He had done a substantial remodeling job on a residence owned by his wife, defendant Narvell Bailey (nee Narvell Gerges), and her sister Pearline at 5485 Silver Hills Circle ("the premises"). Narvell then entered into a sales agreement with Timothy and Linda Bell for the premises for a sale price of $323,000.00. In accordance with Nevada practice, plaintiff served as escrow agent for the transaction. Narvell gave a deed for the premises to the Bells dated April 14, 1994. The deed recited that Narvell was an unmarried woman, though at the time of that transfer that was not true. A closing statement, plaintiff's Exhibit 5, also dated April 14, 1994, was issued by plaintiff reciting that on that date $22,123.00 was paid to defendant E.G. Bailey. This was in payment to E.G. Bailey for the remodeling work he had done on the premises. The closing statement also made reference to payment into an interest-bearing account of $56,250.00 from the purchase price.

Another page, part of plaintiff's Exhibit 5, also made reference to the disbursement to E.G. Bailey of the $22,123.00. That document indicated a check "29236" for $22,123.00, but the number "29236" is lined through and alongside is written "Reissued 29251." Also on date April 14, 1994, the amount to be paid into an interest-bearing account of $56,250.00 was paid into First Interstate Bank. Then plaintiff by document dated March 7, 1995, directed that the interest-bearing account be closed and its contents disbursed to plaintiff. As a result, a check in the amount of $57,510.75 was issued by First Interstate Bank to plaintiff. Plaintiff then, in turn, issued a check in that amount payable to defendant Narvell Gerges and Richard Hill, her then attorney.

The foregoing facts are uncontested. What happened next is the core of the controversy here. The succeeding events are in sharp dispute between the parties, but we find the following to be the facts.

Check # 29236 was mailed by plaintiff to E.G. Bailey after someone at plaintiff's office typed the address 9185 Mile C.R., Reno, NV, 89511, underneath his name. That was an old address of E.G. Bailey. After an unsuccessful effort to have the check delivered to him by the Post Office, E.G. Bailey went to plaintiff's office, told them of these facts, and plaintiff issued check # 29251 as a replacement, at the same time placing a stop order on check # 29236. E.G. Bailey promptly deposited replacement check # 29251. While neither party offered any direct evidence about what then happened to check # 29236, it is evident that it was delivered to E.G. Bailey and/or his wife Narvell. It is fair to infer that this would have occurred within a short period of time after the closing of the real estate sale. At that time, both defendants would be well aware what that check was, and knew that it should have been destroyed or surrendered to plaintiff. It was not. It is admitted by defendant Narvell that, after the stop payment order had expired, she deposited check # 29236 in her business bank account, not that of E.G. Bailey, just over a year after the real estate closing, by means of a deposit slip dated May 1, 1995. Narvell's business account was with the Bank of America, Nevada. Check # 29236 as received by the Bank of America, Nevada, showed a year date in which the number 4 had been overwritten by the number 5, to make it appear that it was dated in 1995. The evidence is undisputed that check # 29236 when issued by plaintiff was dated April 14, 1994, and it left plaintiff's posses-

sion bearing that date. Check # 29236 then was received in the mail by E.G. Bailey or his wife Narvell, and remained in their possession until it was deposited on May 1, 1995. The inference is inescapable that the year date was altered by Narvell when she deposited the check. (E.G. Bailey had departed Nevada prior to the time the deposit was made.)

The elements to establish nondischargeability pursuant to § 523(a)(2)(A) are well established in the Sixth Circuit:

> [i]n order to except a debt from discharge under section 523(a)(2)(A) "the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss." *Atassi v. McLaren* (*In re McLaren*), 990 F.2d 850, 852 (6th Cir.1993) (quoting *Coman v. Phillips* (*In re Phillips*), 804 F.2d 930, 932 (6th Cir.1986)). Additionally, the proper burden upon Longo "in this quest for nondischargeability was to show proof of McLaren's fraud by a preponderance of the evidence only." *Id.* at 853 (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (overruling *In re Phillips*, 804 F.2d 930 (6th Cir.1986), in that respect)).

*In re McLaren*, 3 F.3d 958, 961 (6th Cir. 1993).

■ Applying that law to the present case, we find that there was misrepresentation and actual fraud by defendants when they failed to destroy or surrender check # 29236 upon its receipt after a replacement check had been issued and deposited. That this was an act of actual fraud is clear from the following often quoted statement of the law:

> Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.

4 *Collier on Bankruptcy* ¶ 523.08[1][e] (15th ed. rev.).

The language is applied in a case with remarkably similar facts to the case before us. *See In re Grocki*, 147 B.R. 274, 277 (Bankr. S.D.Fla.1992). That the actions (or inactions) of the defendants were done with intent to deceive is clear from the fact that the check was held for a year, and then deposited, not in an account of E.G. Bailey, but rather a business account of Narvell. The inference is inescapable that the purpose in the delay and the deposit in Narvell's account rather than that of E.G. Bailey was to lead the plaintiff to believe that this was an ordinary transaction. The reliance element is satisfied by the issuance of the replacement check, for in doing so it is clear that plaintiff believed that check # 29236 would not be deposited. The final element, that of damage, requires no comment, for plaintiff is out the sum of $22,123.00. We hold therefore that defendants' debt to plaintiff in the amount of $22,123.00 is nondischargeable pursuant to § 523(a)(2)(A), for actual fraud.

■ Reenforcing this conclusion is an analysis pursuant to § 523(a)(6), a ground for relief alleged in the complaint.

The Sixth Circuit interpreted § 523(a)(6) in *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987). In that decision, the court quoted from a well known treatise for support of its conclusion. The treatise has been revised in later editions than the one utilized by the court in *Perkins*, but the language in the current edition departs only slightly from that quoted in *Perkins*. It reads:

> To fall within the exception of § 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will.
>
> The word "willful" means "deliberate or intentional," referring to a deliberate and intentional act that necessarily leads to injury. Therefore, a wrongful act done

intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse, may be willful and malicious injury.

*4 Collier on Bankruptcy* ¶ 523.12[1] (15th ed. rev.) [1]

Narvell's deposit of check # 29236 with the altered date on May 1, 1995, was the requisite intentional act to satisfy § 523(a)(6). It was wrongful because defendants well knew that a replacement check had been issued and deposited in that amount and there was no intention to pay E.G. Bailey twice for his remodeling work. Again, it needs no comment to establish that plaintiff was harmed by that wrongful act, for it was thereby bilked of $22,123.00. We therefore also hold that the debt owed by defendants to plaintiff in the amount of $22,123.00 to be nondischargeable pursuant to § 523(a)(6).

1. The Sixth Circuit in a later case, *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228–29 (6th Cir.1991) reaffirmed the *Perkins* standard.