In re Ronald **MEADOWS**, Debtor.

David **LESTER**, Plaintiff,

v.

Ronald **MEADOWS**, Defendant.

Bankruptcy No. 96–10719.
Adversary No. 96–1100.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Aug. 21, 1997.

---

Christopher A. Conley, Ashland, KY, for Plaintiff.

Frank J. McCown, Ironton, OH, for Defendant.

### DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BURTON PERLMAN, Bankruptcy Judge.

The present adversary proceeding arises in debtor-defendant's Chapter 7 bankruptcy case and relates to the dischargeability of a debt to plaintiff, a former business associate of defendant.

This court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

In his complaint, plaintiff asserts that defendant is indebted to him in the amount of $100,000 and that this debt is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). Plaintiff alleges that the parties entered into a business relationship in 1992 and that they jointly obtained a line of credit in the amount of $200,000 to finance part of that business. Plaintiff alleges that defendant drew $100,000 from this line of credit, without informing plaintiff, for purposes unrelated to their business relationship. Further, plaintiff alleges that defendant forged his signature to a promissory note for this $100,000. Defendant has failed to repay the $100,000 and plaintiff's potential resulting lia-

bility is the source of the debt at issue herein.

Now before the court are cross-motions for summary judgment submitted by plaintiff and defendant, and their responses thereto. In support of his motion, plaintiff submitted his affidavit, as well as copies of a promissory note, dated June 8, 1992, which obligated both plaintiff and defendant to repay any advances taken on the $200,000 line of credit. Plaintiff also submitted copies of promissory notes dated December 10, 1992 and June 29, 1993, such notes constituting extensions of the original note of June 8, 1992 and requiring regular payments of interest. Further, plaintiff submitted a copy of a promissory note dated December 27, 1993, providing for repayment of the principal of the loan.

In response, defendant did not attach any evidence to his motion as contemplated by Fed.R.Civ.P. 56, but instead, relies upon the pleadings and submissions of plaintiff. Transcripts of depositions of Defendant and Darrell Caldwell, employee of National City Bank, are part of the file for this adversary case.

We find the following facts. Plaintiff and defendant entered into a joint undertaking to purchase a theater in Branson, Missouri. In furtherance of that venture, they sought and were granted a line of credit for $200,000.00 by the Third National Bank of Ashland, Kentucky. The line of credit was granted pursuant to a document entitled Master Promissory Note dated June 8, 1992, with a maturity date of December 10, 1992. Plaintiff and defendant both signed the document. Collateral for the transaction was stated to be "Real Estate Mortgage and S/A. on Motor Vehicle." Upon expiration of the initial Master Promissory Note, a second such Note was issued by the Bank dated December 10, 1992, with a maturity date of June 8, 1993. The second Note differed from the first only in the amount, for the second Note recited a principal amount of $210,000.00. The increase was on account of professional fees connected with the Branson, Missouri transaction, either attorney's fees or real estate fees. Several weeks after the maturity date of the second Note, a third Master Promissory Note was signed by both parties on June 29, 1993, with a maturity date of December 27, 1993. The content of the provisions of the Note were identical with those of the prior one. All three Notes provided that either signatory could draw against the credit, and this could be done in person or by a phone call.

An initial draw of $60,000.00 was made on June 8, 1992, the same date as that of the first Master Promissory Note. There were then draws in October, 1992, and a principal payback in November, 1992. At the end of these transactions, the outstanding balance which had been drawn on the line of credit was $85,000.00. What next happened was that funds were sent to Branson, Missouri, around December 20, 1992, so that by the end of 1992 the total outstanding balance on the credit line was $210,000.00. There was a repayment to the Bank on January 4, 1993, of $125,000.00. Then on January 22, 1993, there was a draw of $100,000.00. This was on the oral request of defendant and the amount of the draw was transferred to his company, Harris Calorifics. This draw had nothing whatever to do with the joint venture that plaintiff and defendant had undertaken in respect to the Branson, Missouri transaction, and the draw was taken without the knowledge or consent of plaintiff. When defendant took the draw on the line of credit in favor of his company, the deal involving the Branson, Missouri property had fallen through.

Upon the maturity date of the last renewal of the initial loan, rather than executing a further extension, the Bank and defendant agreed that permanent arrangements for the repayment of the $185,000.00 which had been drawn against the Master Promissory Note should be made. At the direction of defendant, the Bank prepared two separate Notes, one for $85,000.00 and one for $100,000.00. Because it is undisputed that the $85,000.00 was drawn to satisfy earnest money requirements for the Branson, Missouri deal, plaintiff and defendant both signed that Note. Defendant signed the $100,000.00 Note, but the parties are in dispute as to whether plaintiff ever signed it.

On these facts, cross-motions for summary judgment have been filed by the parties.

Motions for summary judgment are governed by F.R.Civ.P. 56, which is incorporated into bankruptcy practice by F.R.B.P. 7056. That rule provides in part that a motion for summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). The nonmoving party, however, bears the ultimate burden of showing that a genuine issue of material fact exists. In doing so, the nonmoving party cannot rest on its pleadings, but must, in response, offer some evidence which demonstrates a genuine issue of material fact for trial. *Id.*

In his motion, plaintiff asserts that he is entitled to have defendant's debt to him held nondischargeable as a debt incurred through fraud. The relevant statute provides:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

\* \* \* \* \* \*

■ It is the contention of plaintiff that the facts which we have delineated entitle him to summary judgment because those facts show that the requirements of § 523(a)(2)(A) have been met. We agree. The required elements for a claim pursuant to § 523(a)(2)(A) have been set forth thus:

It is well established that in order to except a debt from discharge under section 523(a)(2)(A) "the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss." *Atassi v. McLaren (In re McLaren),* 990 F.2d 850, 852 (6th Cir.1993) (quoting *Coman v. Phillips (In re Phillips* ), 804 F.2d 930, 932 (6th Cir.1986)). Additionally, the proper burden upon Longo "in this quest for nondischargeability was to show proof of McLaren's fraud by a preponderance of the evidence only." *Id.* at 853 (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (overruling *In re Phillips,* 804 F.2d 930 (6th Cir.1986), in that respect)).

*In re McLaren,* 3 F.3d 958, 961 (6th Cir. 1993). Furthermore, the law is well settled that: "A debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A)." 4 *Collier on Bankruptcy* § 523.08[1][d] (15th ed. rev.); *In the Matter of Van Horne,* 823 F.2d 1285, 1288 (8th Cir.1987) ("Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)").

■ The events relevant here begin with the undertaking by plaintiff and defendant to acquire property in Missouri as a joint investment. In furtherance of that venture, they obtained a line of credit from the Bank. The line of credit was secured by collateral, most of which was property owned by plaintiff. The line of credit was to be used by both parties for its intended purpose, as a joint effort. Defendant then unilaterally drew on the line of credit for his own purpose. Defendant failed to inform plaintiff, his joint venturer, of that action. We hold that defendant's failure to communicate to plaintiff anything about that action to be a false representation. It is unarguable from the very fraudulent act itself, that it was done with an intent on the part of defendant to deceive the plaintiff; were that not his intention, defendant would have told plaintiff

what he was about. We find further that the element of justifiable reliance by plaintiff is satisfied, applying the standards set forth in *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). There is nothing which suggests that plaintiff had been warned that he was, or might be, deceived. Only if he had been, was plaintiff required to make an investigation. *In re Ledford,* 970 F.2d 1556, 1560 (6th Cir.1992) (finding reasonable reliance where "[t]here were no 'red flags' that should have alerted the bank" to the fraud). Finally, there is no question that plaintiff was damaged by the fraudulent act of defendant for he has lost the collateral which he posted, and continues to have a liability to the Bank.

In arguing against this conclusion, defendant, after admitting that "defendant Meadows alone and without plaintiff's knowledge, made a $100,000.00 draw on the line of credit, which he transferred to his own corporation, Harris Calorific," argues that this act was not fraudulent. His basis for the assertion is that there was no agreement between the parties as to who could draw on the line of credit, for what purposes, or as to whether consent of both parties was necessary to make a draw. The evidence here, to the contrary, establishes that plaintiff and defendant undertook the line of credit in furtherance of their venture in Missouri. When defendant subverted that arrangement by utilizing the line of credit for his own purposes, and not that of the joint venture, that was a fraudulent act.

The contretemps between the parties, whether plaintiff signed the $100,000.00 note, presents no impediment to summary judgment, for that issue of fact is not material. Defendant's fraud occurred before that note was executed.

■ Reenforcing our conclusion that plaintiff is entitled to summary judgment is an analysis pursuant to § 523(a)(6), one of the bases upon which the complaint rests. The undisputed facts presented by the parties lead us to apply § 523(a)(6), though the parties have not dealt with the issue in their briefs. Section 523(a)(6) states as a ground for denying discharge of a debt, that a debt may not be discharged where it is:

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6).

The language "willful and malicious" requires some interpretation. A basic text in the field of bankruptcy states:

> To fall within the exception of § 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will.
>
> The word "willful" means "deliberate or intentional," referring to a deliberate and intentional act that necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse, may be willful and malicious injury.

*4 Collier on Bankruptcy* § 523.12[1] (15th ed. rev.)

This standard has been approved by the Sixth Circuit in *Perkins v. Scharffe,* 817 F.2d 392 (6th Cir.1987). (The *Perkins* case relied upon the wording in an earlier edition of *Collier,* but the proposition of law in its essence is unaltered in the later edition.) *See also Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228–1229 (6th Cir.1991), where the Sixth Circuit reaffirmed the *Perkins* standard.

In the present case, there is "a deliberate and intentional act" by defendant, the drawing of the $100,000.00 on the letter of credit for his own purpose. The reason that defendant made the draw was to support his company which was in trouble. Since that was defendant's means of livelihood and that enterprise was troubled, it was entirely anticipatable that defendant would be unable to repay the debt. Consequently, when he made the draw there was a "substantial certainty" that harm to plaintiff would result. Finally, defendant has suggested no just cause or excuse for his conduct. Thus, § 523(a)(6) provides an additional basis for

holding for plaintiff on his motion for summary judgment.

Accordingly, plaintiff's motion for summary judgment is granted, and that of defendant denied.

Because plaintiff was a signatory to, and appears to remain liable on the full amount due on, the Master Promissory Note, plaintiff was damaged in the amount remaining unpaid on the $100,000.00 draw taken by defendant. Because this record has not informed us as to that outstanding amount, a further hearing on damages is necessary. The Clerk will set such a hearing forthwith.

So Ordered.