**In re Douglas Clark HOOVER and Cynthia Lynn Hoover, dba Roadhouse Café, Inc., Debtors.**

**Wings & Rings, Inc., Plaintiff,**

**v.**

**Douglas Clark Hoover and Cynthia Lynn Hoover, Defendants.**

**Bankruptcy No. 98–50142.**
**Adversary No. 98–058.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 26, 1999.

Reuel D. Ash, Cors & Bassett, Cincinnati, Ohio, for plaintiff.

James J. Marlin Jr., Columbus, Ohio, for defendants.

David M. Whittaker, Columbus, Ohio, Chapter 7 Trustee.

Alexander G. Barkan, Assistant United States Trustee, Columbus, Ohio.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

On January 7, 1998, the above-captioned voluntary chapter 7 bankruptcy proceeding was filed, and on March 2, 1998, a Complaint to Determine Dischargeability of Debts was filed by Wings & Rings, Inc. ("Plaintiff"). The Plaintiff seeks determination of dischargeability pursuant to sections 523(a)(2)(A) (fraud) and (a)(6) (conversion) of the United States Bankruptcy Code. On March 27, 1998, an Answer was filed by the Debtors, Douglas Clark Hoo-

ver and Cynthia Lynn Hoover ("Defendants"). A trial was conducted on January 8, 1999, at which time the matter was taken under advisement. In this Memorandum Opinion and Order, that constitutes the Court's findings of fact and conclusions of law, the Court has determined that judgment should be rendered in favor of the Plaintiff under section 523(a)(2)(A) but not section (a)(6) of the United States Bankruptcy Code. A brief history of the dispute between the parties is essential to an understanding of this Court's ruling.

The Plaintiff is an Ohio corporation formed as a franchiser of family-style restaurants with twenty-one (21) franchised and four (4) company-owned facilities. In 1989, the Plaintiff and Defendants commenced a franchise relationship for the operation of two Wings & Rings restaurants in the Columbus area. The sole shareholder and founder of the Plaintiff, Teresa C. Rosillo ("Ms. Rosillo") and the Defendants became personally acquainted in the course of their business relationship. Subsequently, the business and personal relationship soured, resulting in the commencement of two lawsuits in 1995, one in the Hamilton County, Ohio, Court of Common Pleas, and one in the Franklin County, Ohio, Court of Common Pleas. To settle this litigation, asset purchase agreements for the sale of the two restaurants to the Plaintiff were executed on July 26, 1996. In relevant part, the agreements contained the following representations:

6.7 Except as set forth in Schedule 6.7 [1], *all federal, state and local tax returns and reports ... required to be filed by Seller have been filed* with the appropriate governmental agencies; such returns and reports properly reflect the taxes of Seller for the periods covered thereby; *all taxes have been paid when due;* Seller has not received any notice of assessment or proposed assess-

ment for additional taxes, interest, or penalties from such agencies and no tax liens exist on any of the property or assets of Seller *except for liens of current taxes not yet due and payable ...* (emphasis supplied).

As part of the sale transactions, escrow agreements were executed on August 1, 1996, that provided for an escrow of five (5) percent of the purchase price of each restaurant that totaled the sum of $10,750.00. Attorney Gina Dougherty ("Ms.Dougherty") was selected as the escrow agent. The stated purpose of the escrow, in relevant part, was to protect the Plaintiff against any losses based upon misrepresentation, breaches of warranties and covenants, judgments, and lawsuits against the Defendants and any creditors' claims. Subsequent to the closing of the transaction, the Plaintiff made a demand upon the escrow based upon alleged faulty equipment and inventory shortages. As of the date of this Order, the Plaintiff and Defendants remain at odds over the appropriate disposition of the escrow.

After the closing, the Plaintiff received notification from the State of Ohio that there were sales tax returns and sales taxes due. The record indicates that there were outstanding returns and taxes for the period of March 1996 through July 1996. To secure transfers of the licenses the Plaintiff paid the sum of $19,326.62 to the State of Ohio and filed returns. The Plaintiff claims that the above-detailed representation that all returns had been filed and taxes were current was fraudulent and entitles it to a determination of nondischargeability and a judgment for the amount of taxes it paid pursuant to section 523(a)(2)(A) of the United States Bankruptcy Code.

The Court heard testimony from Ms. Rosillo, the Defendants, and Ms. Dougherty. All of the parties acknowledge that in

---

**1.** The only unpaid taxes detailed on the attachments were for federal tax liens filed in 1995 in the total amount of $41,758.03.

any sale transaction involving a restaurant there will be some unfiled sales tax returns and unpaid sales taxes due to the filing deadline and payment schedule. The parties differ greatly, however, over whether there was disclosure of the full scope of the unfiled returns and unpaid sales taxes, the purpose of the escrow agreements and whether the amount of taxes paid by the Plaintiff was the amount due.

Ms. Rosillo testified that she was not aware of the scope of unpaid taxes, and that she would not have closed without providing for the escrow of all the sale proceeds. The Defendant, Douglas C. Hoover, has admitted that at the time of the transactions there were outstanding sales tax returns and sales taxes dating back to March 1996, and he admits this fact was not disclosed at the closing.

The Defendant, Mr. Hoover, however, seeks to justify his actions by asserting that the escrow agreements were established to address unpaid sales taxes, and that if the Plaintiff had not demanded to earmark the escrow to repair equipment that was purchased on an "as is" basis, there would have been funds to pay the sales taxes. To the contrary, Ms. Rosillo supports her claim upon the escrow by asserting that certain equipment was to have been repaired prior to closing.

Ms. Dougherty testified that subsequent to closing, and in an effort to facilitate the transfer of the liquor licenses, she became aware of the unfiled returns and unpaid sales taxes. She contacted the Defendants and obtained the necessary documentation to file the returns. She testified that it was her goal to file the returns, then enter into negotiations to have state authorities reduce the sales tax liability, based upon her expertise in this practice area. Ms. Dougherty testified that this process was cut short when she learned that the Plaintiff had already filed returns and paid sales taxes in order to transfer the licenses. A summary of the Defendants' unfiled sales tax returns indicates a total obligation of $15,535.33, that is significantly lower then the amount paid by the Plaintiff.

Also subsequent to execution of the asset purchase agreements and the Plaintiff taking possession of the two restaurants, the sum of $4,342.53 in the Plaintiff's credit card receipts were deposited into the Defendants' restaurant accounts. The testimony of the Plaintiff and Defendants is consistent in that the deposits were inadvertent and through no fault of the Defendants. The Plaintiff, however, seeks recovery pursuant to section 523(a)(6) of the United States Bankruptcy Code on the basis that the Defendants failed to return the deposits on demand. The Defendants testified that all proceeds from the sales of the restaurants to the Plaintiff were placed in a subsequent failed restaurant venture, and that they simply did not have the funds to repay the deposits when brought to their attention. This problem could have been prevented had Plaintiff acted immediately subsequent to closing to provide appropriate notice to the institutions responsible for the processing of credit card receipts.

The applicable statutory provisions are as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ...

11 U.S.C. § 523(a)(2)(A) and (a)(6).

In dischargeability proceedings creditors must establish that a debt should

be excepted from the discharge by a preponderance of the evidence, and exceptions to discharge are strictly construed against creditors. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Ward,* 857 F.2d 1082, 1083 (6th Cir. 1988). To prevail under section 523(a)(2)(A) of the United States Bankruptcy Code, the following elements must be established:

1. Money was obtained through a material misrepresentation;

2. The representation was made with knowledge of its falsity or with gross recklessness as to its truth;

3. There was an intent to deceive;

4. There was justifiable reliance upon the false representations; and

5. The reliance upon the false representations is the proximate cause of the loss;

*In re Rembert,* 141 F.3d 277, 280 (6th Cir.1998); *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ "False pretenses" has been defined as, "an implied misrepresentation or conduct intended to create or foster a false impression.... (I)n effect a false pretense is designed to convey an impression without oral representation." *In re Lewis,* 164 B.R. 588, 591 (Bkrtcy.N.D.Ohio.1994). A "false representation" has been defined as, "an expressed misrepresentation." *Id.* Silence on a material fact may constitute a false representation. *In re Meadows,* 213 B.R. 699, 702 (Bkrtcy.S.D.Oh.1997). A subjective standard is employed to determine intent to deceive which may be inferred from the totality of circumstances. *In re Rembert* at 281–282; *In re Tallant,* 218 B.R. 58, 66 (9th Cir. BAP 1998). Proximate cause is established where the misrepresentation is a substantial factor in the loss and where the loss may be reasonably expected to result from reliance. *In re Young,* 208 B.R. 189, 200 (Bkrtcy. S.D.Cal.1997).

■ While the Court concludes that with the sale of any restaurant there will

by definition be some unfiled sales tax returns and unpaid sales taxes, the extent of the delinquency was not shared with the Plaintiff at the closing. The Court is persuaded that if the Plaintiff had known, the transaction would not have closed without a significantly enhanced escrow. The Court does not find credible the testimony of the Defendant, Douglas Clark Hoover, that the escrow was established to address sales tax delinquencies dating back to March, 1996. Liquor licenses are an invaluable asset to a restaurant, and they can not be transferred if sales taxes are not current. Examining the totality of the circumstances, the Court finds and concludes that by signing the purchase agreements that contained the tax representations detailed above, and by failing to make any further oral or written disclosure at the closing, the Defendant, Douglas Clark Hoover, with intent gave the false impression that there were no tax problems other than those involving federal taxes, and that there were no sales tax returns and sales taxes due other than those involving the period immediately preceding closing. Based upon a review of the terms of the sale transactions and escrow agreements the Court concludes the Plaintiff justifiably relied on the representations and justifiably concluded that there were no sales tax returns and sales taxes due other than those for the period immediately preceding closing. This reliance led directly to the loss suffered by the Plaintiff. On this basis, the Court concludes that the Plaintiff is entitled to a judgment of nondischargeability on this element of its complaint.

■ Given the current state of the record; however, the Court is not prepared to find a judgment amount. The Plaintiff filed returns and paid taxes before Ms. Dougherty could complete the process of having returns prepared and signed by the Defendants filed with the State of Ohio. Data submitted by the Defendants indicates a substantially lower tax liability compared to the sums paid by the Plain-

tiff. The Court will conduct a hearing on **Monday, April 26, 1999, at 2:00 P.M. in Courtroom B, 170 North High Street, Columbus, Ohio** limited to determining the appropriate judgment amount. All parties should be prepared at that time to present all evidence in support of their positions.

To prevail under section 523(a)(6) of the United States Bankruptcy Code on the theory of conversion, it must be established that there was an act to wrongfully exert dominion or control over the property of another, and that this act was committed with the intent to cause harm and was not based upon mere negligence or recklessness. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *In re Wikel*, 229 B.R. 6 (Bankr.N.D.Ohio 1998); *In re Lambillotte*, 17 B.R. 256, 258 (Bkrtcy.M.D.Fla.1982); *In re Verdon*, 95 B.R. 877, 885 (Bkrtcy. N.D.N.Y.1989); *In re Dawes*, 189 B.R. 714, 721 (Bkrtcy.N.D.Ill.1995). In the instant case it is undisputed that the Defendants in no way caused the credit card receipts to be deposited to accounts of their former restaurants. In no way can they be said to have intended to cause harm. Indeed, the deposits were based upon the Plaintiff's negligence and recklessness in not making sure that the credit card receipts were forwarded to it subsequent to the closing. At the times of the deposits into the Defendants' restaurant accounts, although inadvertent, this Court concludes the funds were no longer Plaintiff's property. *See In re Lambillotte*, at 258; *In re Verdon*, at 885 and *In re Dawes*, at 721. Further, the Court concludes when the Defendants were contacted about Plaintiff's inadvertent deposits, they simply did not have the financial ability to return the funds, even assuming they were obligated to do so, since the funds were voluntarily deposited to accounts under their control based upon the Plaintiff's negligence. On this basis, the Court concludes there was no act of conversion and no intent to harm the Plaintiff. Accordingly, the Defendants are entitled to judgment in their favor and a discharge on this element of Plaintiff's Complaint.

**IT IS SO ORDERED.**