In re Douglas Lloyd **LOGAN**, Debtor.

**Deborah Williams, Plaintiff,**

v.

**Douglas Lloyd Logan, Defendant.**

**Bankruptcy No. 02–56934.**
**Adversary No. 02–02405.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 23, 2004.

circumstances of this adversary proceeding, this was not a realistic option for this trial court.

746

Douglas J. Segerman, McFadden, Winner & Savage, Columbus, OH, Counsel for the Plaintiff.

Alexander G. Barkan, Columbus, OH, Assistant U.S. Trustee.

Michael T. Gunner, Hilliard, OH, Counsel for the Defendant.

Douglas L. Logan, Reynoldsburg, OH, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

CHARLES M. CALDWELL,
Bankruptcy Judge.

The Court submits this Memorandum Opinion and Order as its findings of fact and conclusions of law. To block the discharge of debt, Deborah Williams ("Plaintiff") filed this adversary proceeding against Douglas Lloyd Logan ("Defendant"). The Plaintiff's challenge is based upon section 523(a)(2)(A) of the United States Bankruptcy Code ("Code").[1] The Plaintiff alleges that Defendant fraudulently induced her to enter into a home remodeling contract. The Court has considered the evidence and has reviewed the post trial memoranda, the Code and case law. It has concluded that the Plaintiff is entitled to a non dischargeable judgment against the Defendant. A brief history will illustrate the bases for this decision.

In late 2001, the Plaintiff decided to have a 16–by–28 foot addition built onto her existing home, that included a basement and featured new plumbing and electrical wiring. She visited home improvement stores including Home Depot and Lowes to price materials and gather design ideas. The Defendant was referred by a store employee to three contractors, one of whom was the Defendant.

The Plaintiff met with the Defendant at her home to discuss the project, and explained to him that she wished to keep the project cost around $50,000.00. The Defendant responded with a proposed contract priced at $49,678.00, half of which ($24,839.00) was due as a deposit. The Defendant testified that he usually required a 50% deposit. The Plaintiff inquired as to the purpose of the deposit, and the Defendant explained that it would be used for labor and materials for her project. The Plaintiff testified that she would not have signed the contract if she knew her deposit would be used on other projects.

The Plaintiff also testified that she expressed to the Defendant her concern that the job would be completed, and stated to him that she would not sign the contract unless the Defendant was insured or bonded. Aware that the Plaintiff was seeking assurance that the job would be completed, the Defendant agreed to insert a contract provision indicating that he was "Completely Insured," and the Plaintiff testified that the Defendant told her he was bonded. The parties have stipulated that at the time the contract was executed the Defendant carried only general liability insurance coverage, and he did not have a performance bond.

The Defendant's proposed contract price was less than the one the Plaintiff received from another contractor. For this reason, she decided to enter into the contract with the Defendant. She provided the Defendant with the deposit on December 11, 2001. No further payments were due under the contract until the project reached the "dry in" phase, at which point an additional $12,419.50 was due. From the Defendant's bank statement under the name of Omega Contracting System, it appears that the sum of $24,400.00 was deposited on December 13, 2001, and that prior to that deposit the account reflected a balance of only $878.83. On Dec. 13, 2001, following the deposit the account reflected a balance of $24,445.66.

The Defendant told the Plaintiff that the project would take four to six months to

---

1. In the Complaint filed on September 3, 2002, the Plaintiff also asserted claims under sections 523(a)(4) and (6) of the Code. In the Plaintiff's post-trial memorandum, however, it is indicated that only the claim under section 523(a)(2)(A) is being pursued.

complete. The Defendant testified, however, that he anticipated it would only take three months. Work on the project began in late December 2001, and the basement was poured and blocked in by early February 2002. No work, however, appears to have been performed for an approximately three-week period from February 19 through March 12, 2002, despite temperatures that were generally consistent with or slightly higher than the seasonal averages. A Mr. Dale Eggna, the Defendant's primary laborer on the project, told the Plaintiff that he was having trouble obtaining money from the Defendant for the requisite materials. As of March 8, 2002, the balance in the Defendant's business bank account was down to $991.37 compared to $40,605.36 on December 20, 2001.

The Plaintiff testified that siding and shingles were removed from her home in January 2002 in anticipation of the installation of pre fabricated trusses. She testified that the pre fabricated trusses never arrived, and that the lack of siding and shingles caused weather damage to her home and resulted in a rodent infestation. The Plaintiff also testified that she repeatedly asked the Defendant for an itemized budget for the project to ascertain the allowances for flooring, cabinets, etc. She testified that the Defendant failed to provide her with such information despite several promises.

The Plaintiff testified that she believed that permits were required for the job, and that she expected that the Defendant would obtain them. When she did not see any permits on display, the Plaintiff repeatedly inquired, and was told by the Defendant that they were not required. The Defendant testified that he visited the Walnut Township Zoning Office twice, and was told that a permit was not required. Section 410 of the Walnut Township Zoning Resolution, however, provides that, "(n)o building ... excepting buildings ... for agricultural purposes shall be ... added to ... without a permit ..."

According to the Plaintiff's testimony, by April 2002, she was very discouraged by the lack of progress, and asked the Defendant if he still had her deposit money. The Defendant responded that he had the funds. The Plaintiff expressed her desire to allow the Defendant to keep the portion of the deposit he had earned for the work completed and have the rest refunded to her so that she could proceed with hiring another contractor. The Defendant testified that he acknowledged to the Plaintiff an obligation to repay $17,000.00 from the deposit. The Plaintiff testified that the Defendant, however, was evasive with regard to the return of the money, and that he even claimed he was having trouble obtaining the funds from an out of town bank account.

As of April 17, 2002, the addition had been framed, but no walls or ceiling had been constructed, and the frame was not yet under a roof. The Plaintiff fired the Defendant on multiple occasions, and on or about April 17, 2002, the Plaintiff fired the Defendant a final time. From that point the Defendant performed no additional work. The Defendant testified that, but for his termination, he intended to finish the job. The Defendant acknowledged in his testimony, however, that he did not have sufficient funds in his bank account to complete the project to the "dry in" phase, at which point another payment from the Plaintiff would have become due. As of April 15, 2002, the Defendant's business bank account reflected a balance of only $1,013.02. Further, the Defendant did not make any arrangements with an electrician or plumber. The Defendant explained in his testimony that progress on the project never reached the point where such discussions became necessary.

On May 31, 2002, the Defendant filed a petition for relief under chapter 7 of the Code. The Defendant has acknowledged that he only performed $6,000.00 to $10,000.00 worth of work on the Plaintiff's project. He does not dispute that, if the bankruptcy had not been filed, he would owe a debt of $17,000.00 to the Plaintiff. The Plaintiff commenced the instant adversary proceeding on September 3, 2002.

The issue before this Court is whether the Defendant fraudulently induced the Plaintiff to enter into a home remodeling contract within the meaning of section 523(a)(2)(A) of the Code. That section provides in relevant part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

■■■ To establish that a debt is non dischargeable under section 523 of the Code, a creditor must prove their case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To prevail under section 523(a)(2)(A) of the Code, a creditor must establish the following elements:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

(2) the debtor intended to deceive the creditor;

(3) the creditor justifiably relied on the false representation; and

(4) its reliance was the proximate cause of the loss.

*Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–281 (6th Cir.1998), *cert. denied* 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998).

■■■ "False pretenses" may be defined as conduct that is intended to give a false impression. *Wings & Rings, Inc. v. Hoover (In re Hoover)*, 232 B.R. 695, 700 (Bankr.S.D.Oh.1999) *(citation omitted)*. Intent to deceive may be inferred from a debtor's actions at the time of and subsequent to the loss. The role of the Court is to "... consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor." *Bernard Lumber Co., et al. v. Patrick (In re Patrick)*, 265 B.R. 913, 916–917 (Bankr.N.D.Oh.2001); *Crawford v. Monfort (In re Monfort)*, 276 B.R. 793, 796 (Bankr.N.D.Oh.2001); *In re Hoover*, 232 B.R. 695 at 700.

■■■ The creditor must establish that the reliance was justifiable, which takes into account the circumstances of each case and the nature of the interactions between the parties and their experiences. *Field v. Mans*, 516 U.S. 59, 77, 116 S.Ct. 437, 447, 133 L.Ed.2d 351 (1995); Jeffrey R. Priebe, "*Field v. Mans* and *In re Keim*; Excepting Debts From Bankruptcy Discharge and the Difference Between 'Experienced Horsemen' and Reasonable Men", 54 Ark. L.Rev. 99–109–110 (2001). To establish proximate cause, it must be demonstrated that the conduct was a substantial factor in the loss, or the loss may be reasonably expected to follow. *In re Hoover*, 232 B.R. at 700.

■■■ The Court concludes that the Plaintiff has sustained her burden by a preponderance of the evidence. In reviewing the evidence, the Court finds the Plaintiff's testimony credible that the Defendant intentionally engaged in deceptive conduct

for the purpose of inducing the Plaintiff into the home remodeling contract. The Court finds that the Plaintiff was misled in two critical respects. First, the Defendant admitted in his testimony that he told the Plaintiff that the deposit was to be used for labor and materials on her project. Instead, the Defendant admitted in his testimony that the money was used to help fund his general business operations, including other projects. Second, the Defendant intentionally misled the Plaintiff with respect to whether he carried insurance. or a performance bond that would ensure that the job would be completed. These two misrepresentations will be addressed in turn.

First, the Court finds that the Plaintiff was led to believe that her deposit was to be used for labor and materials on her project. The Plaintiff was concerned about providing the Defendant with such a large deposit, and inquired how it would be used. The Defendant responded with the reassuring assertion that the deposit would be used for materials and labor on her project. He did not share with her that it would also be used to help fund his day-to-day business operations, including other projects. In light of this omission, the Court concludes that the Defendant's statement regarding the intended use of the deposit constituted a material misrepresentation made with the intent to deceive. The Defendant's deception served its intended purpose, as the Plaintiff credibly testified that she would not have signed the contract if she had known her deposit would be used on other projects.

Second, the Court concludes that the Defendant intentionally misled the Plaintiff with respect to whether he carried insurance or a performance bond that would ensure that the job would be completed. In response to Plaintiff's stated concerns with respect to ensuring the com-

pletion of the job, the Defendant agreed to insert the language "Completely Insured" into the contract, and he told the Plaintiff that he was bonded. In fact, the Defendant carried only general liability insurance coverage, and he did not have a performance bond. The Court concludes that the Defendant intended to deceive the Plaintiff with reference to coverage in the event of any default.

In addition, the Court concludes that the Plaintiff relied on these misrepresentations made by the Defendant in deciding to enter into the home remodeling contract, and that her reliance was justifiable. A more sophisticated consumer may have required the Defendant to segregate the deposit from his general business funds, or to provide documentation of his insurance coverage before signing the contract. While the Court recognizes that the Plaintiff had been previously involved in the construction of a barn, this Court observed that she is not highly experienced in dealing with construction contractors. The Plaintiff appropriately demonstrated her concerns by inquiring about the use of the deposit and the extent of the Defendant's insurance coverage, and the Court concludes that the Plaintiff was justified in taking the Defendant at his word.

Regarding the proximate cause element, the Court concludes that the Plaintiff would not have been harmed if the Defendant had not deceived her. If she had been informed that the Defendant's general liability coverage did not ensure the completion of the project, and that her large deposit would be used in part to help fund other projects, the Plaintiff has credibly testified that she would not have entered into the home remodeling contract.

Accordingly, the Court finds and concludes that the Plaintiff has sustained her burden of proving all of the elements necessary to prevail under section 523(a)(2)(A)

of the Code. The Defendant's actions present a picture of deceptive conduct engaged in for the purpose of luring the Plaintiff into the home remodeling contract. Accordingly, the $17,000.00 debt that the Defendant owes the Plaintiff is non **dischargeable.**

**IT IS SO ORDERED.**

### JUDGMENT

Pursuant to a Memorandum Opinion and Order entered on even date, a non dischargeable judgment is granted in favor of the Plaintiff in the amount of $17,000.00 against the Defendant, in addition to federal statutory interest from the date of entry of this Judgment and costs of collection.

**IT IS SO ORDERED.**